IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

2011 SEP -2 PM 4: 19

*B. West*

ONEBEACON AMERICA INSURANCE )
COMPANY, as successor to )
Commercial Union Insurance )
Company, )
 )
        Plaintiff, )     CASE NO. CV410-118
 )
v. )
 )
THE CATHOLIC DIOCESE OF )
SAVANNAH, )
 )
        Defendant. )
 )

## O R D E R

Before  the  Court  are  Defendant's  Motion  for  Summary
Judgment (Doc. 23) and Plaintiff's Motion for Summary Judgment
(Doc. 25).   For the reasons that follow, Plaintiff's motion is
**GRANTED** and Defendant's motion is **DENIED**.   The Clerk of Court is
**DIRECTED** to close this case.

### BACKGROUND

Plaintiff originally filed suit in this Court on May 11,
2010, seeking a declaratory judgment to clarify its duties and
obligations under certain insurance policies issued to Defendant
many decades ago.  (Doc. 1.)  On May 28, 2010, Defendant timely
filed an answer and asserted a counterclaim against Plaintiff,
which alleged that Plaintiff "acted in bad faith" and "was
negligent in its claim handling."  (Doc. 6 ¶¶ 11-12.)

This insurance dispute is related to an underlying lawsuit filed in the Court of Common Pleas of Jasper County, South Carolina: <u>Allan Carl Ranta v. The Roman Catholic Diocese of Savannah</u>. (Doc. 1 ¶ 6.) In this suit, Allan Carl Ranta ("Ranta") alleged that Wayland Yoder Brown ("Brown") sexually molested him from 1978 to 1982 while Brown was employed by Defendant as a priest, youth leader, and counselor. (<u>Id.</u> at 7.) Defendant contends that certain insurance policies it purchased from Commercial Union Insurance Company, numbered as: CZ-W28-7237, CZ-9745-001, and AZ9745004, provide coverage for Ranta's lawsuit. (Doc. 23, Attach. 2 ¶ 1; Doc. 31 ¶ 1.)

Defendant moved for summary judgment on December 30, 2010, claiming that Plaintiff has waived all coverage defenses by failing to immediately seek declaratory relief.[1] (Doc. 23, Attach. 1.) Plaintiff filed its motion for summary judgment on the same date, arguing that Defendant failed to comply with the policies' conditions precedent requiring notification to the Plaintiff, that Defendant voluntarily compromised the underlying lawsuit and is not entitled to indemnification, and that charitable immunity would have barred any claims covered by the policies. (Doc. 25, Attach. 1.) As to Defendant's counterclaim, Plaintiff contends that an "insured cannot assert

---

[1] Subsequent briefing included other arguments, which are addressed below only as necessary.

a claim against its insurer for bad faith failure or negligent failure to compromise in the absence of a jury verdict." (Id. at 21.) The parties have filed numerous responsive briefs opposing each other's motions and supporting their own. (Docs. 27, 30, 33, 34.)

## ANALYSIS

I.  SUMMARY JUDGMENT STANDARD

According to Fed. R. Civ. P. 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Such a motion must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee notes).

Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law governing the action determines whether an element is essential.

DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

As the Supreme Court explained:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-88. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary

judgment." <u>Barfield v. Brierton</u>, 883 F.2d 923, 933-34 (11th Cir. 1989). Where, as in this case, there is no real dispute concerning any facts material to the outcome of this case, the issue is only a question of law. See <u>United States v. Oakley</u>, 744 F.2d 1553, 1555-56 (11th Cir. 1984). As a result, the case may be decided on cross-motions for summary judgment. <u>Id.</u>

## II. CHOICE OF LAW

This Court is exercising jurisdiction based on diversity of citizenship. Therefore, the choice of law rules of the forum state of Georgia determine what substantive law applies to this dispute. <u>U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp.</u>, 550 F.3d 1031, 1033 (11th Cir. 2008). Georgia applies the traditional rule of lex loci contractus, <u>Convergys Corp. v. Keener</u>, 276 Ga. 808, 811, 582 S.E.2d 84, 86 (2003), and an "insurance contract is constructively made at the place where the contract is delivered," <u>McGow v. McCurry</u>, 412 F.3d 1207, 1217 (11th Cir. 2005) (quoting <u>Fed. Ins. Co. v. Nat'l Distrib. Co.</u>, 203 Ga. App. 763, 767, 417 S.E.2d 671, 674-75 (1992)). The parties appear to agree that Georgia law governs this dispute, as virtually all cases cited in the brief apply the law of this state. Accordingly, the Court will apply Georgia law to this case.

III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The primary argument Defendant advances in its Motion for Summary Judgment is that Plaintiff waived all coverage defenses by failing to immediately seek declaratory relief. (Doc. 23, Attach. 1 at 4.) Defendant cites the case of Richmond v. Ga. Farm. Bureau. Ins. Co., 140 Ga. App. 215, 219, 231 S.E.2d 248, 248 (1976), for the proposition that

> [u]pon learning of facts reasonably putting it on notice that there may be grounds for noncoverage and where the insured refuses to consent to a defense under a reservation of rights, the insurer must thereupon (a) give the insured proper unilateral notice of its reservation of rights, (b) take necessary steps to prevent the main case from going into default or to prevent the insured from being otherwise prejudiced, and (c) seek immediate declaratory relief including a stay of the main case pending final resolution of the declaratory judgment action.

Id. However, this case and the third part of the rule it creates are not the end of the analysis. Subsequent cases have significantly softened the requirement of seeking "immediate" declaratory relief. In S. Gen. Ins. Co. v. Buck, 202 Ga. App. 103, 105, 413 S.E.2d 481, 482-83 (1991), the Georgia Court of Appeals held that an insurance company had not waived its right to seek judicial determination of policy coverage despite waiting fourteen months following the filing of the underlying tort suit to initiate a declaratory judgment. Even though the court

disapprove[d] of such a lengthy delay and recognize[d] that the immediacy requirement of Richmond has not been met, we cannot, in the absence of a showing of prejudice by appellees as movants on summary judgment, conclude as a matter of law that Southern General waived its right to seek a judicial determination of its obligation for coverage under the policies of insurance.

Id. at 105, 413 S.E.2d at 483.

Relaxation of strict compliance with this rule is a reflection of the policy on which this requirement is founded. The Supreme Court of Georgia explained that the rule in Richmond "is based on principles of fairness, and, in determining whether an insurer has met the requirements thereof, the crucial inquiry is whether the rights of the insured have been adequately protected," specifically mentioning fully informing the insured and preventing the entry of default against the insured in the underlying litigation. Kelly v. Lloyd's of London, 255 Ga. 291, 293-94, 336 S.E.2d 772, 775 (1985). More recent cases continue to require that an insured demonstrate prejudice resulting from the insurer's delay in filing a declaratory judgment action. Danforth v. Gov't Emps. Ins. Co., 282 Ga. App. 421, 429, 638 S.E.2d 852, 860 (2006) (noting that noncompliance with Richmond does not preclude a declaratory judgment action where insured cannot show that any prejudice resulted from [insurer's] conduct).

Therefore, Defendant must demonstrate prejudice before Plaintiff would be stopped from contesting coverage under the policies. The Court concludes, however, that based on the facts of this case, Defendant is unable to satisfy that requirement. A brief overview of the conduct of the parties and their communications with each other evidences why this required element of Defendant's argument is lacking.

Although the conduct resulting in the Ranta lawsuit occurred decades ago, Ranta filed suit against Defendant in 2006. (Doc. 23, Attach. 2 ¶ 3; Doc 31 ¶ 3.) Defendant first made a demand for coverage, defense, and indemnification under the policies in "January or February of 2008." (Doc. 23, Attach. 2 ¶ 4; Doc. 31 ¶ 4.) Plaintiff first responded to this notice of claim by letter dated October 21, 2008, in which Plaintiff denied coverage. (Doc. 23, Attach. 2 ¶ 7; Doc. 31 ¶ 7.) On December 8, 2008, Defendant notified Plaintiff by letter that it contested the denial of coverage. (Doc. 23, Attach. 2 ¶ 8; Doc. 31 ¶ 8.) In June 2009, Plaintiff changed its position and "undertook to participate in the defense of The Diocese along with a second insurer, Catholic Mutual Insurance Company" pursuant to a reservation of rights letter issued on June 22, 2009. (Doc. 23, Attach. 2 ¶ 9-10; Doc. 31 ¶ 9-10.) Several months later, Defendant notified Plaintiff by letters dated September 29, 2009 and October 7, 2009 that it "did not

agree with the positions taken in the reservation of rights letter and again objected to the position taken by [Plaintiff] with regard to coverage, defense, and indemnification." (Doc. 23, Attach. 2 ¶ 11; Doc. 31 ¶ 11.) Just a few weeks later on October 27, 2009, the Ranta lawsuit was compromised during a second mediation ordered by the trial court for $4.24 million. (Doc. 23, Attach. 2 ¶ 12; Doc. 31 ¶ 12.)

Plaintiff observed that as of the time of its Reply Brief in Support of its Motion for Summary Judgment, Defendant "ha[d] not made any showing of prejudice" and argued that Defendant suffered no prejudice. (Doc. 34 at 2.) Just fifteen minutes earlier, however, Defendant filed its Reply Brief in Support of its Motion for Summary Judgment (Doc. 33), which was almost entirely dedicated to the topic. Unfortunately, however, Defendant's attempt falls short. The prejudice it complains of appears not to be the kind that is contemplated by Georgia cases. For example, Defendant contends that it was prejudiced by its compromise of the lawsuit, Plaintiff's contribution of "less that [sic] 5% of the total," Defendant's payment of "$2,315,000 of its own money in order to bring the Ranta matter to a close," Plaintiff's "deliberate[] with[olding]" of decisions on disputed coverage issues, and Plaintiff's failure to seek

the appropriate declaratory resolution of these issues
during the pendency of the Ranta claim, so as to leave
the Diocese in a position where it would be faced with
the necessity of paying its own money to resolve the
Ranta claim when OneBeacon refused to commit more than
a nominal sum toward the settlement.

(Doc. 33.)

The "prejudice" that Defendant complains of, however, goes
only toward its disagreement with Defendant's decisions about
the coverage under the policies. Defendant never went into
default in the underlying Ranta lawsuit. Indeed, its defense
was well underway much prior to the time that Plaintiff ever
received notice of the civil action. Further, Plaintiff had
been providing a defense under a reservation of rights to
Defendant for three months before Defendant sent a notice
objecting to the reservation of rights. (Doc. 23, Attach. 2
¶ 9-11; Doc. 31 ¶ 9-11.) Under Georgia law, this alone provides
an independent ground for denial of Defendant's motion. Even
the Richmond case on which Defendant heavily relies qualifies
its holding, limiting applicability to situations in where the
insured did not give "express or implied consent." Richmond,
140 Ga. App. at 219, 231 S.E.2d at 251. The Georgia Court of
Appeals subsequently held, "[b]y not objecting to the
reservation of rights letter and by permitting [the insurer] to
go forward with its defense of the suit, [the insured] is deemed
to have consented to the letter's terms." Kay-Lex Co. v. Essex

10

Ins. Co., 286 Ga. App. 484, 491, 649 S.E.2d 602, 609 (2007).
While Plaintiff was still providing this defense, but less than
a month after Defendant objected to the reservation of rights,
Defendant compromised the claim. (Doc. 23, Attach. 2 ¶ 12; Doc.
31 ¶ 12.) Accordingly, the Court concludes that Defendant has
failed to show prejudice as a matter of law.

But even if Defendant had been able to show prejudice, the
relevant policies are not rewritten and coverage is not expanded
in scope. The Supreme Court of Georgia has observed that an
insurer's decision to deny coverage is not always final and that
it can permissibly change its position, even by later issuing a
reservation of rights. See Drawdy v. Direct Gen. Ins. Co., 277
Ga. 107, 109, 586 S.E.2d 228, 230 (2003) ("[A]n insurer is not
estopped from changing its position after an initial denial of
coverage and is allowed to seek declaratory judgment in those
situations where the insurer has both indicated its willingness
to reconsider its insured's claim and has positively
demonstrated that it considers the question of coverage to still
be in issue, e.g., by undertaking a defense of its insured under
a reservation of rights."); see also Danforth, 282 Ga. App. at
424, 638 S.E.2d at 856 (2006) ("[T]he mere fact that an insurer
initially denies a claim does not always preclude that insurer
from re-evaluating its position. Where, as here, an insurer
initially denies a claim, but subsequently opts to defend the

11

insured under a reservation of rights letter, that insurer is not precluded from seeking a declaratory judgment to ascertain its rights."). Further, even if Plaintiff did breach its duty to defend, which this Court does not decide in this analysis, the impact of such a finding would still not entitle Defendant to the relief it seeks, namely a finding that Plaintiff has waived all coverage defenses. In a recent case, the Georgia Court of Appeals discussed the limited consequences of an insurer's failure to defend by stating that

> Georgia law is clear that by refusing to defend its insured in litigation, an insurer loses all opportunity to contest the negligence of the insured or the injured person's right to recover, and exposes itself to a charge of and penalty for breach of contract. By electing not to defend its insured, however, an insurer does not waive [] either its right or its opportunity to contest entitlement to a recovery under its polic[ies] covering [the insured], because the question of whether the polic[ies] provide[] coverage for the claim[s] is separate from the legal consequences of an insurer's refusal to indemnify or defend. As the Supreme Court of Georgia has explained, when an insurer breaches the contract by wrongfully refusing to provide a defense, the insured is entitled to receive only what it is owed under the contract—the cost of defense. The breach of the duty to defend, however, should not enlarge indemnity coverage beyond the parties' contract. This rule . . . recognizes that the duty to defend and the duty to pay are independent obligations.

McGregor v. Columbia Nat. Ins. Co., 298 Ga. App. 491, 494, 680 S.E.2d 559, 562 (2009) (internal citations and quotations omitted) (second emphasis added). Simply by refusing to defend, an insurer does not waive its right to contest an insured's

12

claim that a policy provides coverage. S. Guar. Ins. Co. v. Dowse, 278 Ga. 674, 676, 605 S.E.2d 27, 29 (2004) ("Obviously, if the underlying claim is outside the policy's scope of coverage, then [the insurer's] refusal to indemnify or defend was justified and it is not liable to make payment within the policy's limits." (emphasis added)). Accordingly, Plaintiff is neither precluded from filing the instant action nor advancing any defenses it has to Defendant's assertion of coverage. For all the reasons set forth above, Defendant's motion is **DENIED**.

III. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff has moved for summary judgment on its own claim for declaratory judgment on the grounds that Defendant failed to comply with notice provisions that are conditions precedent to coverage (Doc. 25, Attach. 1 at 6-13), that Defendant voluntarily compromised the underlying lawsuit (id. at 13-18), and that charitable immunity would have barred any claims against Defendant covered under the policies (id. at 18-20). Plaintiff has also moved for summary judgment on Defendant's counterclaim. (Id. at 21-22.) The Court has addressed the dispositive portion of those arguments and additional relevant law as follows.

A. DEFENDANT'S DELAY IN PROVIDING NOTICE TO PLAINTIFF

Plaintiff argues that the Ranta action is not covered under the policies because Defendant did not comply with several

13

notice provisions that were a condition precedent to coverage. (Id. at 6-13.) For the reasons that follow, this Court agrees. Under Georgia law,

> a notice provision expressly made a condition precedent to coverage is valid and must be complied with, absent a showing of justification. Where an insured has not demonstrated justification for failure to give notice according to the terms of the policy, . . . then the insurer is not obligated to provide either a defense or coverage.

Kay-Lex Co., 286 Ga. App. at 488, 649 S.E.2d at 606 (citations and quotations omitted) (emphasis added) (quoting Federated Mut. Ins. Co. v. Ownbey Enters., 278 Ga. App. 1, 3, 627 S.E.2d 917, 919 (2006)). Conditions precedent to an insurance contract "must be complied with, absent a showing of justification." Richmond, 140 Ga. App. at 221, 231 S.E.2d at 250.

The parties do not dispute that the relevant policy language in this dispute states, under a section titled, "INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT," that "[i]f claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons, or other process received by him or his representative. (Doc. 26, Attach. 6 ¶ 16; Doc. 27, Attach. 4 ¶ 16.) Subsequent terms of the policy explicitly state that, "[n]o action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy . . . ." (Doc.

26, Attach. 6 ¶ 16 (emphasis added); Doc. 27, Attach. 4 ¶ 16.) Defendants have not argued that this language is anything other than a condition precedent, and several Georgia courts have found similar and identical notice provisions to be a condition precedent to coverage. See Trinity Universal Ins. Co. v. Ga. Cas. & Sur. Co., 2009 U.S. Dist. LEXIS 36433, at *8-*9 (N.D. Ga. Apr. 28, 2009) (unpublished).

In Georgia, the general rule is that questions going to the adequacy or timeliness of notice and any justification offered by the insured for failure to give notice are issues of fact for determination by a jury. Alea London Ltd. v. Howard, 2008 WL 693799, at *6 (M.D. Ga. Mar. 12, 2008) (unpublished) (citing Allstate Ins. Co. v. Walker, 254 Ga. App. 315, 316, 562 S.E.2d 267, 268 (2002)). However, that general rule is not without an important exception, as numerous Georgia cases have been able to decide these issues without a jury because "[a]n unexcused significant delay in notifying an insurer about an incident or lawsuit, however, may be unreasonable as a matter of law." Id. (quoting Walker, 254 Ga. App. at 316, 562 S.E.2d at 268).

A review of the facts of this case and the relevant case law indicates that the consequences of events preceding the filing of this lawsuit can be determined as a matter of law. The Ranta lawsuit was filed on April 6, 2006. (Doc. 25, Attach. 6 ¶ 1; Doc. 27, Attach. 4 ¶ 1.) Defendant filed an answer to

the Ranta lawsuit in May 2006. (Doc. 25, Attach. 6 ¶ 4; Doc. 27, Attach. 4 ¶ 4.) Defendant did not notify Plaintiff, as the successor to Commercial Union, or Resolute Management, as the third-party administrator for Plaintiff, until January 23, 2008. (Doc. 25, Attach. 6 ¶¶ 4-5; Doc. 27, Attach. 4 ¶¶ 4-5.) This period of approximately twenty-one months far exceeds delays in other Georgia cases where the delay has been found unreasonable as a matter of law. "[W]here no valid excuse exists, failure to give written notice for periods in the range of four to eight months is unreasonable as a matter of law. Cotton States Mut. Ins. Co. v. Int'l Surplus Lines Ins. Co., 652 F. Supp. 851, 856 (N.D. Ga. 1986) (citing Dillard v. Allstate Ins. Co., 145 Ga. App. 755, 245 S.E.2d 30 (1978); Stonewall Ins. Co. v. Farone, 129 Ga. App. 471, 199 S.E.2d 852 (1973)); see also Walker, 254 Ga. App. at 316, 562 S.E.2d at 268 (deciding that the insurer was entitled to summary judgment where the insureds did not provide notification for almost a year); Se. Exp. Sys., Inc. v. S. Guar. Ins. Co. of Ga., 224 Ga. App. 697, 701, 482 S.E.2d 433, 436 (1997) ("[T]he delay in providing notice of an existing lawsuit and the failure to deliver the suit papers after service for nearly eighteen months was unreasonable as a matter of law absent a reasonable excuse for the delay."); EVI Equip., Inc. v. N. Ins. Co. of N.Y., 188 Ga. App. 818, 819, 374 S.E.2d 788, 790 (1988) (eleventh month delay precluded recovery); Snow v.

Atlanta Int'l Ins. Co., 182 Ga. App. 1, 1, 354 S.E.2d 644, 645
(1987) (holding delay unexcused and unreasonable as a matter of
law where insurer was not notified of filing of lawsuit for six
months).

In opposition to Plaintiff's motion, Defendant argues that
the delay was excused because it "provided notice of the claim
and a copy of the lawsuit immediately upon the discovery of
coverage, noting that the policies were between twenty-six to
thirty-three years old at the time the Ranta matter was filed
and they were not immediately located . . . ." (Doc. 27 at 6-
7.) Apparently, Defendant's prior insurance agent discovered
information on the policies in January of 2008. (Id. at 7
(emphasis added).) The sole case that Defendant cites in
support of this argument is easily distinguishable because, in
that case, the plaintiff's mother, as the insured, indicated
that she was specifically and repeatedly told by the insurer's
agent that the policy would not cover that specific accident.
Sands v. Grain Dealers Mut. Ins. Co., 154 Ga. App. 720, 721, 270
S.E.2d at 9 (1980). The Court of Appeals expressly referenced
the conflicting evidence in holding that summary judgment was
inappropriate, even where eleven months passed between the
accident and notification to the insurer. Id. at 721, 270
S.E.2d at 8-9. Indeed, being unaware that a policy covers a
particular loss, especially due to "fraud or overreaching on the

17

part of [the insurer] or its agents," is a different question. Walker, 254 Ga. App. at 316, 562 S.E.2d at 268.

Very recently, the Georgia Court of Appeals cited Walker with approval, noting that "ignorance of [the] right to submit a claim under the policy did not provide an excuse for the delay." Lankford v. State Farm Mut. Auto. Ins. Co., 307 Ga. App. 12, 16, 703 S.E.2d 436, 440 (2010) (emphasis added) (citing Walker, 254 Ga. App. at 315, 562 S.E.2d at 267). Earlier cases also support the rule that being unaware that a policy covers a loss does not excuse performance of the conditions precedent to coverage. See Snow, 182 Ga. App. at 2, 354 S.E.2d at 645 (finding that six month delay between lawsuit filing and notifying insurer was unexcused and unreasonable as a matter of law where insured trucker knew that policies with separate companies existed to cover the accident but did not notify any insurers and was unaware of which insurance company provided coverage). Notice provisions in insurance policies are typically made a condition precedent to coverage "so that insurers can be certain that they are given the opportunity to investigate the facts surrounding an incident promptly and to prepare a defense or settlement while the facts are still fresh and witnesses are still available." Trinity Universal, 2009 U.S. Dist. LEXIS 36433, at *8. Simply put, "[t]he law requires more than just ignorance,

or even misplaced confidence, to avoid the terms of a valid contract." Walker, 254 Ga. App. at 316, 562 S.E.2d at 268.

As a final argument to avoid the entry of summary judgment, Defendant argues that an insurer in Georgia must demonstrate prejudice resulting from an insured's delay in notifying the insurer of suit. (Doc. 27 at 8-10.) This statement, however, is not the law. Instead, "under Georgia common law, [] prejudice is irrelevant to an insurer's assertion of notice as a coverage defense because failure to give timely notice is a failure of a condition precedent to coverage which alone voids coverage." Travelers Indem. Co. v. Douglasville Dev., LLC, 2008 U.S. Dist. LEXIS 71956, at *17-*18 (N.D. Ga. Sept. 19, 2008) (unpublished) (citations omitted). For all the reasons above, Plaintiff's Motion for Summary Judgment (Doc. 25) is **GRANTED IN PART** and Plaintiff is entitled to declaratory judgment.

### B. COUNTERCLAIM FOR BAD FAITH AND NEGLIGENCE

The Court has interpreted this claim as one arising out of O.C.G.A. § 33-4-6. Under that statute, if an insurer refuses in bad faith to pay a loss within an allotted time after demand has been made by the insured, the insurer becomes potentially liable for the loss, an additional percentage as a penalty, and attorney's fees. Id. § 33-4-6(a). As the Supreme Court of Georgia has held, a voluntary payment by an insured, such as one reached in settlement, does not constitute a legal obligation

19

under the applicable insurance policy. Trinity Outdoor, LLC v. Cent. Mut. Ins. Co., 285 Ga. 583, 585, 679 S.E.2d 10, 12 (2009). This Court also found, under a similar policy of insurance, that the insured did not have an action against the insurer for bad faith in the absence of a jury verdict. Id. at 587, 679 S.E.2d at 13.

Further, Georgia law holds that "[i]f there is any reasonable grounds for an insurer to contest the claim, there is no bad faith." Progressive Cas. Ins. Co. v. Avery, 165 Ga. App. 703, 706, 302 S.E.2d 605, 607 (1983). This is a corollary of the Georgia definition of bad faith by an insurer, which requires "a frivolous and unfounded denial of liability." John Hancock Mut. Life Ins. Co. v. Poss, 154 Ga. App. 272, 278, 267 S.E.2d 877, 883 (1980). Based on this Court's conclusions above, Plaintiff not only reasonably contested liability, but also was correct in doing so. As a result, Defendant's counterclaim for bad faith fails.

As for Defendant's counterclaim based on Plaintiff's alleged negligence, Georgia does not appear to recognize such a claim based solely on the facts of this case. The Georgia Court of Appeals has effectively foreclosed this theory of recovery absent extraordinary circumstances by stating that "a mere breach of a valid contract amounting to no more than a failure to perform in accordance with its terms does not constitute a

tort or authorize the aggrieved party to elect whether he will proceed ex contractu or ex delicto." Tate v. Aetna Cas. & Sur. Co., 149 Ga. App. 123, 124, 253 S.E.2d 775, 777 (1979); see also Great Sw. Express Co. v. Great Am. Ins. Co., 292 Ga. App. 757, 761 n.3, 665 S.E.2d 878, 881 n.3 (2008) ("[A]bsent some special relationship beyond the relation of insurer and insured, O.C.G.A. § 33-4-6 provides the exclusive remedy."). Unless the law imposes a special duty arising in tort, "the damages sought to be recovered by the plaintiff are limited to the 'bad faith' provisions" of Georgia's statutory law. Id. at 125. Plaintiff has not alleged the existence of any special duty or extraordinary circumstances in this case.

For these reasons, Defendant cannot maintain an action for bad faith against Plaintiff, and other Georgia decisions hold that the action for bad faith is the exclusive remedy for the harm Defendant alleged in its counterclaim. Accordingly, Plaintiff's Motion for Summary Judgment (Doc. 25, Attach. 1 at 21-22) is also **GRANTED** as to the entirety of Defendant's counterclaim.

## CONCLUSION

For the reasons above, Plaintiff's Motion for Summary Judgment (Doc. 25) is **GRANTED** as to both Plaintiff's complaint for declaratory judgment and Defendant's counterclaim.

Similarly, Defendant's Motion for Summary Judgment (Doc. 27) is **DENIED**. The Clerk of Court is **DIRECTED** to close this case.

SO ORDERED this 2ᴺᴰ day of September 2011.

WILLIAM T. MOORE, JR.
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA